DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant appeals the judgment of the Lucas County Court of Common Pleas, Juvenile Division, terminating her parental rights and granting permanent custody of her four-year-old son to a children's services agency. For the reasons that follow, we affirm. *Page 2 
 {¶ 2} Appellant is 18-year-old Deborah W., mother of four-year-old Davontae W. The whereabouts of Davontae's alleged father, Carlos J., are unknown. He is not a party to this appeal.
 {¶ 3} In 2005, appellant lived with her mother in Danville, Illinois, when she was arrested for an alleged assault on her middle school principal. An Illinois juvenile court placed appellant on probation, but a short time later appellant was again arrested in a scheme to kidnap a boyfriend's child.
 {¶ 4} This time, appellant was referred to a psychiatric facility where she was diagnosed as being developmentally delayed. The psychiatric findings also included attention deficit disorder, oppositional defiant disorder, and mood and post traumatic stress disorders. According to tests conducted at the Illinois facility, appellant exhibited mild mental retardation with a full-scale IQ of 66. She was found not competent to stand trial on the kidnapping charge.
 {¶ 5} Meanwhile, Davontae had been staying with a friend of appellant's mother in Chicago. At some point, appellant's mother found this arrangement unacceptable and, with the aid of Illinois authorities, arranged to have Davontae transferred to the care of a maternal great aunt in Toledo, Ohio. Shortly thereafter, with bus tickets purchased by the Illinois Department of Child and Family Services, appellant and her mother relocated to Toledo.
 {¶ 6} In Toledo, appellant came to the attention of appellee, Lucas County Children Services Board, when she was arrested for obstructing official business *Page 3 
following a fight shortly after her arrival. When police could not find appellant's mother, appellee intervened.
 {¶ 7} Appellee located appellant's mother, opened a file on the family and drafted a "safety plan" wherein Davontae would remain with his great aunt. When appellant objected to this arrangement, appellee filed a complaint alleging that Davontae was dependent and neglected. Following a hearing, Davontae was adjudicated neglected. The court awarded temporary custody to his great aunt. Appellee was directed to provide case plan services with a goal of reuniting the family.
 {¶ 8} Shortly after the order, appellant advised appellee that the great aunt had left Davontae in the care of a registered sex offender. Appellant sought the return of the child to her care or that of her mother. The agency removed Davontae from the aunt's care, but Davontae's caseworker opposed placing him with either his mother or maternal grandmother, as both had documented substance-abuse problems. Moreover, appellant had mental health issues and appellant's mother had two children who previously had died in her care.
 {¶ 9} The court awarded custody to appellee, which placed Davontae in foster care. Shortly thereafter, appellant's guardian ad litem filed a complaint alleging that appellant was neglected or dependent. As a result, in August 2006, appellant's custody was also awarded to appellee. Appellee placed appellant in therapeutic foster care. Her case plan called for substance abuse and diagnostic assessment, establishment of independent housing and completion of parenting classes. *Page 4 
 {¶ 10} Shortly after her placement in foster care, appellant left the foster home and could not be located. At the final hearing, appellant's caseworker testified that of the 203 days appellant was in the legal custody of the agency, appellant was absent without permission from her foster home for 136 days, and an additional four days were spent in the juvenile detention center. As a result, appellant participated in only a small fraction of the services made available to her.
 {¶ 11} On February 15, 2007, appellee moved for permanent custody of Davontae. Following two days of hearings in July 2007, the trial court found that Davontae could not, or should not be placed with either of his parents within a reasonable period of time and that award of his permanent custody to appellee was in his best interest. From this judgment, appellant now brings this appeal, setting forth the following single assignment of error:
 {¶ 12} "The trial court's finding that permanent custody should be awarded to the Lucas County Children Services pursuant to O.R.C. §2151.414(D) (E) was not supported by clear and convincing evidence."
 {¶ 13} Permanent removal of a child from his or her natural parents may be permitted, "only where there is demonstrated an incapacity on the part of the parent to provide adequate parental care * * *." In reLay (1987), 43 Ohio App.3d 78, 82, citing In re Konneker (1929),30 Ohio App. 502, 511. "Before any court may consider whether a child's best interests may be served by permanent removal from his or her family, there *Page 5 
must first be a determination that the parents are `unfit.'" In reStacey S. (1999), 136 Ohio App.3d 503, 516, citing Quilloin v.Walcott (1978), 434 U.S. 246, 254.
 {¶ 14} In Ohio, for a child who is not abandoned or orphaned, parental unfitness is statutorily defined as when the child, "* * * cannot be placed with either parent within a reasonable period of time or should not be placed with the parents * * *." R.C. 2151.414(E). To reach such a conclusion, the court must find by clear and convincing evidence that at least one of the 16 predicate conditions enumerated in R.C.2151.414(E)(1) through (16) exists. When at least one of these factors is found, the court must then determine whether termination of the parents' rights is in the best interest of the child. In re StaceyS., supra, at 517; see, also, In re William S. (1996), 75 Ohio St.3d 95,97, 1996-Ohio-182. Clear and convincing evidence is that evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 15} In this matter, the trial court expressly found that appellee had proved the factors contained in R.C. 2151.414(E)(1), (2), (4), (14) and (16). If any one of these factors is supported by the evidence, the trial court's judgment must be affirmed.
 {¶ 16} R.C. 2151.414(E)(16) is the "catch-all" provision of the statute. It provides that a finding that a child cannot now or within a reasonable period be reunited with his or her parent may be premised on "[a]ny other factor the court considers relevant." This court has repeatedly held that when a court relies on the (E)(16) factor "* * * it must articulate with specificity what factor or factors the court feels can be a substitute for one *Page 6 
of the (E)(1) through (15) findings. In re Alyssa Nicole C,153 Ohio App.3d 10, 16-17, 2003-Ohio-2673, ¶ 31; In re Crystal C, 6th Dist. No. L-01-1336, 2002-Ohio-855; In re Tashayla S., 6th Dist. No. L-03-1253,2004-Ohio-896, ¶ 24." In the matter of Rashaun B., 6th Dist. No. L-03-1306, 2004-Ohio-7349, ¶ 22. The judgment in this matter does not articulate a specific alternative factor or state any equivalency reasons. Thus, R.C. 2151.414(E)(16) is unavailable to support the court's conclusions.
 {¶ 17} With respect to the remaining factors, in material part, R.C.2151.414(E)(1) permits a finding that "* * * a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents * * *" when "[f]ollowing the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."
 {¶ 18} Appellant argues that there was insufficient evidence to suggest that appellee provided reasonable case planning and diligent efforts to aid reunification and that the court failed to explain what condition that caused the child to be removed from *Page 7 
the home had not been remedied. She supports her first proposition with a comment from the magistrate at an August 8, 2006 dispositional hearing which, appellant suggests, implied that appellee was deficient in its case planning.
 {¶ 19} Appellant's second prong is premised on what she purports is a directive of this court to "* * * first look to the original complaint or removal order to determine what acts of neglect, abuse or endangerment * * * necessitate[d] removal of a child from his or her natural parent's custody * * *." In the matter of Sarah H. (Dec. 16, 1994), 6th Dist. No. L-94-116. Appellant insists that the trial court's failure to reference the portion of the initial complaint giving rise to the R.C. 2151.414(E)(1) finding defeats the finding.
 {¶ 20} It should be noted that the magistrate's comment upon which appellant asserts a lack of reasonable case planning was antecedent to appellant coming into appellee's custody. The record is clear that after appellant came into appellee's custody, the agency provided comprehensive planning to remedy appellant's problems. We cannot know whether any of the plans and programs offered by appellee would have been effective, because appellant disappeared, availing herself of only the most minimal and sporadic use of what was offered. Appellant elected to live on the streets. She cannot now be heard to complain the services she eschewed were deficient.
 {¶ 21} With respect to referencing the complaint to determine the reason a child is removed from the home, our advice was more precatory than mandatory. Appellant has provided no authority, nor are we aware of any, that demands reliance on specific complaint language to identify the reason a child was removed for purposes of R.C. *Page 8 2151.414(E)(1). In this matter, the court discusses appellant's unresolved mental and substance abuse problems as the reason the family cannot be reunited within a reasonable time. These are the same issues mentioned in the initial neglect/dependency complaint and the same issues raised at length in the Illinois assessment. A fair reading of either of these documents suggests that these issues underlie Davontae's original separation from his mother and the continued separation after the move to Ohio. There is ample evidence in the record to support the court's finding that these issues continue to be unresolved.
 {¶ 22} While a properly supported finding pursuant to R.C.2151.414(E)(1) is sufficient to sustain the court's judgment, we should also note that there is sufficient evidence to support the court's findings under R.C. 2151.414(E)(2), chronic mental illness/ retardation; (E)(4), failing to regularly support; and (E)(14), unwilling to provide necessities.
 {¶ 23} Accordingly, appellant's sole assignment of error is found not well-taken.
 {¶ 24} On consideration whereof, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
 JUDGMENT AFFIRMED. *Page 9 
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., Arlene Singer, J., CONCUR. *Page 1